OCTOBER AND NOVEMBER TERM, 1884, No. 140. NOVEMBER 10, 1884.

## Riddle v. Stewart.

1. In an action of replevin by C against A and B, it appeared that A and B, engaged as A, B & Co., in the business of manufacturing and selling brushes, became indebted to C in a large sum, for which they

[Riddle *v.* Stewart.]

gave him their judgment note. C entered it of record, issued execution, levied upon the stock in the store of A & B, and became the purchaser at the sale. C at once re-opened the store under the firm name of A, B Co., and placed A and B in charge. The defendants gave evidence that some weeks after the sale, C called on A and B and made this proposition to them, which was accepted :   Here, what has been done is neither here nor there ; my errand to-night is to give this busi ness to A and B ; of course, on these conditions : that they pay me my $24,000, with interest, and I don't want you to tell a living soul that I have given you the business until you get my debt considerably reduced. *Held,* that the alleged contract was in no sense a gift, but was, in legal substance, a sale and transfer of title for a full consideration.

2. The vendees being already in possession, no formal delivery of the goods was necessary in order to pass title as between them and the vendor.

3. On the trial, the Court charged generally that the plaintiff could recover upon showing to the satisfaction of the jury either a general or special property and a right to the possession of the goods at the time the writ was issued.   The Court also affirmed defendant's point, "that unless the jury find from the evidence that W. N. Riddle, the plaintiff, was, at the time of issuing the writ of replevin in the case, the *sole and exclusive owner* of the property in dispute, and at the time had the right to the immediate possession he is not entitled to recover, and the verdict should be for the defendants." *Held,* that as no distinction between absolute and qualified property was raised by any aspect of the testimony, and as the point related only to the number and connections of owners, and not to the character or quality of the title, it did not conflict with the general charge, and would not form ground for reversal, the point itself being entirely harmless and of no consequence in the case.

4. Where a witness testified that in his capacity of client he made a certain request to his counsel, the evidence of his counsel that he made no such request is competent.

5. This competency does not extend, however, to privileged communications between client and counsel made at an earlier time, as to which the client had given no testimony and had not been interrogated.

6. The client cannot be held to have waived his privilege as to such communications.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Error to the court of Common Pleas, No. 1, of *Allegheny County.*

Replevin, by W. N. Riddle against W. C. Stewart and C. E. Stewart, for a stock of goods valued at $41,000 in two stores in Pittsburgh.

The facts of the case, as they appeared on the trial before COLLIER, J , are as follows : The defendants, with their mother, Mrs. Catharine Stewart, under the firm name of Stewart Bros. & Co., had for some time prior to March 21, 1878, carried on the business of manufacturing and selling brushes in the city of Pittsburgh.   The plaintiff had indorsed largely for this firm, and to secure him-

self, he took from them their two judgment notes, one for $24,000—the amount of his indorsement for them—and one for $10,500. These notes he caused to be entered, and on March 21, 1878, executions were issued thereon, levy made upon the goods in the store of Stewart Bros. & Co. on March 23, 1878, and sale thereunder of the same on April 5, 1878, when W. N. Riddle, the plaintiff, became the purchaser to the amount of $18,040—of all the stock in the two stores, except goods which were sold for cash, to the amount of $720. These amounts were credited on his judgment, and the sheriff delivered to him a bill of sale and actual possession of the goods. Immediately after the sale, the stores were re-opened by Mr. Riddle, and the business resumed in the name of Stewart Bro's. Co., the defendants, Charles E. and W. C. Stewart, remaining in charge, under the direction of the plaintiff. There was no dispute by any of the parties that at this time W. N. Riddle was the sole owner of the business; he signed checks; leases and insurance policies were made in his name, and certificates to the United States Government stated his ownership. The two defendants and two other persons—members of their family—testified that a few weeks after the sale the plaintiff came to their house, and in the presence of Mrs. Catharine Stewart, the two defendants, their sister Kate, and brother David, said: "Here. what has been done is neither here nor there; my errand here to-night is to give this business to Charley and Billy; from this night the business belongs to Charley and Billy (the two defendants); of course, on these conditions : that they pay me my $24,-000, with the seven per cent. interest; I want you to keep this perfectly quiet; I don't want you to tell a living soul that I have given you the business until you get my debt reduced considerably." The defendants alleged that they had accepted this proposition; that they took charge of the business from that time, and that they had paid more than half their debt to plaintiff, and had offered him a certified check for what they believed the balance to be. The plaintiff denied having made this agreement; claimed that the business was conducted by the defendants for him until September, 1882, when, he says, he expressed to defendants his desire to sell to them, or any one they would name, the entire business for the exact sum his business relations with the Stewarts had cost him. A dispute arose between the parties as to what this sum was, and the writ of replevin in this suit was then issued, October 13, 1882. During the trial, the plaintiff, in cross-

[Riddle *v.* Stewart.]

examining Charles E. Stewart, one of the defendants,
showed that in proceedings for divorce with alimony, in-
stituted against him by his wife, he had testified, some-
time in April, 1882, that Mr. Riddle was the proprietor
of the business; that he (the witness) and his brother
were working under a salary of $1,200 per annum, man-
aging the business under Mr. Riddle. The witness ex-
plained that he had made these statements while laboring
under great mental excitement and when in ill health, and
that seeing it in "black and white afterwards," he had
asked his attorney, Thomas C. Lazear, Esquire, for an op-
portunity to correct it. Mr. Lazear, being called by the
plaintiff in rebuttal, testified that the defendant, C. E.
Stewart, had made no such request to him. Plaintiff
then made the following offer:

"One of the defendants having testified that the testi-
mony having been given by him in a certain legal pro-
ceeding, and identified by him on the stand, was given
when he was greatly excited, and that he asked his coun-
sel to afford him an opportunity to correct that testimony;
we propose now to show by counsel referred to by de-
fendant, not only that he was not called upon to afford
an opportunity to have the testimony corrected, but that
it was consistent with, and in identical terms with, what
defendant informed him in advance of said taking of tes-
timony would be testified to by him, and immediately
before taking of said testimony, and which he disclosed
to his counsel for the purpose of having said counsel
bring out in the examination said fact in the divorce pro-
ceedings referred to. This for the purpose of contradict-
ing the defendant, C. E. Stewart, and for the purpose of
further corroborating testimony given by said Stewart in
the divorce proceedings."

Refused.

(Sixth assignment of error.)

The plaintiff submitted, *inter alia*, the following points:

"Under all the evidence, the possession of the goods
was in W. N. Riddle, on April 11, 1878, and the defend-
ants held only for him; their actual possession was his
possession, and there is no evidence of any legal change
up to the time the writ in this case was issued."

Refused.

(First assignment of error.)

"Under all the evidence, there is no proof of any de-
livery of the goods in dispute to the defendants."

Refused.

(Second assignment of error.)

[Riddle *v.* Stewart.]

"The defendants allege a gift to them, in the spring of 1878, by the plaintiff, as the basis of their right to these goods. If the jury should find there was no such gift, then their verdict should be for the plaintiff."

Refused.

(Third assignment of error.)

The Court charged, *inter alia*, as follows:

"The law requires, under that state of facts, that the case shall be tried, and it requires that on the trial the plaintiff shall show, to the satisfaction of the jury, that he has either a general or a special property in the goods, and a right to the possession of them.

"The only matter to determine is whether the plaintiff has shown a general or a special property in the goods replevied, and whether the plaintiff was entitled to the possession. If he shows that, then, in this action, he has shown all that he is required to do, and any other matters of difference between the parties must be settled in some other way.

"With that understanding, let us proceed to what is claimed on both sides.

"The plaintiff, when he commenced his side of the case, showed you he had a judgment of between $24,000 and $26,000; that he issued an execution on that judgment and sold the property; that after selling it he took possession, and after taking possession put these two boys, the defendants, in the store, they having been connected with the old business and understanding something about it, and being a friend of their family; that he ran the business as his own, they acting under him as his agents or clerks. He further showed that the books were opened in accordance therewith; that he signed all checks (or most of them) in the business; he signed leases; had some policies of insurance transferred to him, and that he was liable for all the debts under such circumstances, and that he so continued to run it until the time of the issuing of the writ of replevin, when, as he alleges, they were trying to come to some understanding; the defendants disclaimed his title, and, with an oath, said they would show him whose the property was and with that he issued his writ of replevin.

"Now, gentlemen, if that is believed, if that is satisfactory, then the plaintiff has clearly made out a case for himself, *prima facie*, and until it is overthrown the plaintiff would be entitled to a verdict for the property.

"Now, before we come to the defense, I may say that you have nothing to do with the items of the judgment

[Riddle *v.* Stewart.]

in this case.   The judgment cannot be impeached collat-
erally in a proceeding of this kind, nor has it been at-
tempted.   You have nothing to do with the original
judgment.   The judgment stands for the amount. .

  " We come now to the defense.

  " The defendants set up a defense, and it is this : They
say it is true that Mr. Riddle did own the property; that
he did start to carry it on himself; that they were put in
there under him; that he was to sign the checks and carry
on the business.   They say that is true at the time he
bought the goods, and for some weeks after; but that
some weeks after that, he (Riddle) being a friend of the
family, came to their house, and used language some-
thing like this, in the presence, they say, of the family: 'I
want to make you feel good; from this night, I either give
to you, or the business is yours, Charley's and Billy's,'
alluding to these defendants.   'I expect you to pay me
my $24,000 which is coming to me, with seven per cent.
interest, and you keep this matter quiet until you have
paid a good deal of it, and that will be all right.'   That
is the essence of the allegations.   They allege that they
accepted that; that they were in possession under him;
that they continued to run the business; that they put
into the business some of their own money, and then al-
lege that they took charge of the business from that time,
and that they kept paying on the debt, as they call it,
until they paid about $13,000—paid more than half of it
—and that they were ready to pay the balance, and, I
believe, one of the young men offered, if the amount was
satisfactory, to give a certified check for it, but they
could not agree upon the amount.

  " Now, gentlemen, if that agreement was made, no mat-
ter how unreasonable you may think it was, the plaintiff
would have to abide by it.   This is testified to, in sub-
stance, by three or four witnesses—members of the family.
You heard them all called, and what they said.

  " If such a bargain was made, if the plaintiff chose,
after he had the goods and had thus far secured that much
of his claim, chose to make that kind of a bargain and
take the risk, that is a matter of his own, and whatever
you may think of the act, if he really made that bargain,
of course he would have to stand to it; and if you believe
that that agreement was made, carried out, and executed,
acts done on the strength of it, money paid on it, then
the plaintiff would have to look for the balance, if there
be any coming to him, to them individually, and he could
not claim these goods.   This is the first defense.   There

is another branch of the defense set up by the defendants, and it is this: They allege that even if you should not find that, if from the evidence, you should find that a different bargain was made, to wit: that there was an agreement made between them that the boys should keep possession of the property and carry on business themselves, and that the plaintiff was to keep the title, that it was not to pass from him until they had paid the debt; then it was necessary for the plaintiff, before he took the goods out of their hands, to give them a reasonable notice and make a demand of them to pay the money or he would take the goods.

"Although the theories may seem inconsistent, still if the evidence would show that, the proposition is sound. If you find that they did not have any notice, and were not given a reasonable time, that proposition would be correct, and it is for you to say whether there is evidence to sustain that or not.

"Now, gentlemen, those are the defenses set up. Most of the evidence relates, as far as I can see, to the first branch. The defendants maintain they have offered evidence tending to strengthen that position; they allege they have offered you the acts of the plaintiff; they have offered some papers, notes, etc., and offered evidence tending to show you that they acted on the strength of that; that they went on and carried on the business themselves; that they put in the business all the money they could get; that they sold the property and put the proceeds in the business to run it and pay off this debt. You will remember the testimony. All that evidence is for you. The evidence relative to the books is not given for the purpose, as I said before, of settling the account. You cannot do that in this case. The object of that evidence was to show you acts done in accordance with that theory of the defense.

"Now, the plaintiff rebuts and denies all that. He alleges no such bargain was made. He admits he had in his mind ultimately, or at some time when he was in a proper condition—when his claim was paid—to give the business to them. But he alleges he never made any such bargain, for the very obvious reason that it would injure the security to his claim, and he offers evidence of acts done on the part of the defendants utterly inconsistent with their view. He offers evidence to show you that the books were started in his name; and not altered till after divorce suit. One of the defendants answers by saying that he was directed by the plaintiff to make the alter-

ations. The plaintiff denies that. There is a great deal of contradictory testimony, and you will have to work it out yourselves.

"Then the plaintiff offers other evidence to contradict the defendants. He offers a certificate to the government, made a short time before this suit, before there was any difficulty between the parties. They wanted to get a government contract, and the government rules required the ownership of the establishment to be stated. One of the defendants made out in writing a certificate to the government that Mr. Riddle was the actual owner, wrote it in his own handwriting, took it to Mr. Riddle, and Mr. Riddle signed it on the theory that he was the owner, and had been the owner all the time.

"So that you give to that such weight as you see proper in a matter of that kind, and unless it be explained, it would be one item of evidence, it strikes me, of some weight. But that, of course, is for you. You heard the answer to that.

"The plaintiff offers other acts of the defendants. He offers the testimony of one of the defendants in a divorce suit in which he said he was not the owner; that he was under salary, and that Mr. Riddle was the owner, (and in that case the object was to see how much he was worth so that his wife would get alimony,) and he also testified that he was getting then $1,200 salary ; that he had been getting $2,000 ; and that he did not own this property at all.

"On the other side, that was answered by the defendant saying he was suffering under great mental excitement and trouble ; that he had been taking a good deal of quack medicine, and that he was in a bad mental condition, and until the testimony was printed he didn't understand it and told his counsel, Mr. Brown, (and Mr. Brown so testified,) that he wished to correct it.

"Now, there is a great deal of testimony in the case which is very contradictory, and it is your duty to reconcile it if you can, and determine upon which side the weight lies.

"I think I have called your attention, gentlemen, to the salient points in the case. I will say again, so as to get it thoroughly before you, that if the plaintiff has satisfied you from his evidence that he bought that business (and that is not disputed), that he went into possession of the property (and that is not disputed) after a sale on a valid judgment (which you cannot now inquire into); that he put these defendants in under him, to run his

[Riddle *v.* Stewart.]

business ; that he did run it ; that he remained the owner ; that he acted as owner ; that the books were opened showing it as his property ; and that it continued in that way down to the issuing of the writ of replevin, he would have a case for recovery in his favor, unless the defendants have satisfied you of their defense, or satisfied you that that is not correct.  As I said before, the only question in the case is : has the plaintiff satisfied you that he had a general or special property in these goods, and the right of possession at the time the writ of replevin was issued ? You have nothing to do with the settling of the accounts of the parties.  It is a simple question whether he was right in issuing the writ of replevin.

" Then, if the defendants on their side have satisfied you that it is not true, or if they have satisfied you with either of the defenses set up, your verdict should be in their favor."

Defendants presented, *inter alia*, the following point :

" *First.* That unless the jury find from the evidence that W. N. Riddle, the plaintiff, was, at the time of the issuing of the writ in this case, *the sole and exclusive owner* of the property in dispute, and, at the time, had the right to the immediate possession, he is not entitled to recover, and their verdict should be for defendants."

Affirmed.

(Fourth assignment of error.)

Verdict for defendants and judgment thereon, whereupon plaintiff took this writ, assigning for error the refusal of his points and offer of evidence and affirmance of defendants' point given above.

The Fifth assignment of error was as follows :

The charge of the Court was contradictory and tended to mislead the jury in this : That, while in the general charge, the Court ruled in substance that if the plaintiff had a general or special property in the goods replieved, and was entitled to the possession thereof when the writ was issued, he could maintain the action ; whereas, in affirming the first point of defendant in error, the Court charged that, in order to maintain the action, the plaintiff must be " *the sole and exclusive owner of the property in dispute.*"

*John Dalzell, D. T. Watson,* and *Isaac Van Voorhis* for plaintiff in error.

To have vested the title to the goods in dispute in the Stewarts, delivery was necessary ; a mere parol gift by word of mouth or executory contract does not pass

title: Houser *v*. Kemp, 3 Pa. St., 208; Lester *v*. McDowell, 18 Pa. St., 91; Winslow *v*. Leonard, 24 Pa. St., 14.

While it is true that, in the preface to the general charge, the Court said that either a general or special property would enable a party to maintain replevin, yet this is contrary to the doctrine affirmed at the request of the defendants that, before the plaintiff could recover, he must satisfy them that he was, at the time the writ of replevin issued, "*the sole and exclusive owner of the property in dispute;*" and it left the jury with contradictory views as to the title the plaintiff must have in order to maintain the action. This, of itself, was error, because, if the charge tended to mislead, the Court will reverse. Nothing could certainly be more misleading than directly contrary opinions on exactly the same point.

The offer of evidence, the refusal of which forms our sixth assignment of error, was, beyond question, relevant. Why not competent? It is said because it was a confidential communication from Stewart, as client, to Mr. Lazear, his attorney. But Stewart himself opened the door, and of his own motion. May we not follow and show, not merely the one detail he refers to, but all the facts so far as they bear on the question? Did Stewart, by mistake and inadvertently, make such statements in his testimony in the divorce case, as he now alleges he did, or was it a calm, deliberate statement of facts? The protection insured by the relationship of lawyer and client is created solely for the benefit of the client, and there is no ground for protection where he waives it: Wharton's Ev. (Sec.,) 584, and Note 3; Hamilton *v*. People, 29 Michigan, 183; Hartford Ins. Co. *v*. Reynolds, 36 Michigan, 502.

*T. M. Marshall, A. M. Brown, C. C. Dickey, and Slagle & Wiley* for defendants in error.

The assumption by plaintiff that defendants allege a gift to them as the basis of their defense is without foundation. Such an agreement as that alleged by defendants is in no sense a gift, it is clearly a purchase, the consideration being the payment of claims which had been partially extinguished by the sheriff's sale.

If, then, the agreement amounted to a purchase of the goods by the defendants, as the jury have found, the goods being at the time in their possession, no delivery could be made, and, therefore, none was necessary.

Even if the Court was not strictly right in affirming the

defendants' first point, under the charge of the Court and answers to other points, the jury could not have been misled as to the real question in issue, and, therefore, no harm could have been done to plaintiff.

Although part of a charge may seem erroneous, there is no error if, taken as a whole, the question at issue is left fairly to the jury : Reese v. Reese, 90 Pa. St., 89 ; Little Schuylkill Nav. Co. v. French, 81 Pa. St., 374 ; Vandike v. Rosskam, 67 Pa. St., 334 ; Brightly Dig., 882, pl., 210.

The offer of evidence, the refusal of which is the ground of the sixth assignment of error, was clearly incompetent for the purpose of contradicting the defendant, C. E. Stewart, for the reason that he had not been asked in reference to any conversation prior to the taking of the testimony.

But it was clearly incompetent, because the conversations which they proposed to prove were privileged.

It was admitted, the offer itself shows, that they were given to Mr. Lazear as counsel in the case then pending, and to enable him to conduct that case, and Mr. Lazear was permitted, without objection, to contradict the only matter to which Mr. Stewart had referred.

It is apparent that this testimony was not competent for the purpose of contradiction, and it was not competent for the "purpose of further corroborating testimony given by said Stewart in the divorce proceedings :" Moore v. Bray, 10 Pa. St., 519 ; Miller v. Weeks, 22 Pa. St., 89.

January 5, 1885, the opinion of the Court was delivered by GREEN, J.:

"The transaction in controversy in this case was, in no sense, a gift. A gift is a gratuity, and nothing of that kind was claimed by the defendants. The contract alleged by them was, in legal substance, a sale ; a transfer of title upon the payment of a full consideration, and upon that issue the case was thoroughly tried, and carefully committed to the jury by the learned Court below. The defendants being already in the possession of the goods, no formal delivery of possession was necessary in order to pass title as between the plaintiff and them. The first three assignments are without merit, and are not sustained. As to the fourth and fifth assignments, it is only necessary to say that no question involving the distinction between absolute and qualified property was raised by any aspect of the testimony. The plaintiff

[Appeal of Rev. Nevin Woodside *et al.*]

claimed title to the goods in suit as owner, and the defendants claimed that they were the owners. The Court repeatedly told the jury that the plaintiff could recover upon either a general or special property, and a right to the possession of the goods at the time the writ was issued, and this was not contradicted by the affirmance of the defendants' first point. It is not easy to see that there was any occasion for the point, as the plaintiff claimed title as sole owner, and there was no evidence showing that he held title jointly with others. The point, therefore, was entirely harmless, and, as it related only to the number and connection of owners, and not to the character or quality of the title, the answer did not conflict with the general charge, and the point itself was of no consequence in the case.

"The offer of contradiction covered by the sixth assignment was too large. It was competent to contradict the witness, C. E. Stewart, by showing that he had not called upon his counsel, Mr. Lazear, for the opportunity to correct his testimony in the former case, because he had testified that he had done so on cross-examination. But that was the whole of his testimony on that subject. In point of fact, this contradiction was offered and given in evidence immediately before the enlarged offer was made. This offer, however, went far beyond the subject of the contradiction. It proposed to give in evidence privileged communications between client and counsel made prior to the time of the testimony in the former case, and as to which the client had given no testimony and had not been interrogated. It cannot be said, with any fairness, that the client had waived his privilege as to any such communications, and the offer to give them in evidence was, therefore, properly rejected."

Judgment affirmed.